**STATE of Iowa, Plaintiff-Appellee,**

v.

**Darrell Lee LATHUM,
Defendant-Appellant.**

No. 84–1124.

Court of Appeals of Iowa.

Nov. 26, 1985.

Charles Harrington, Chief Appellate Defender, and Michael J. Laughlin, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Valencia Voyd McCown, Asst. Atty. Gen., and Denver D. Dillard, Linn County Atty., for plaintiff-appellee.

Heard by SNELL, P.J., and SCHLEGEL, and HAYDEN, JJ., but considered en banc.

HAYDEN, Judge.

Defendant appeals from his conviction for burglary in the second degree in violation of Iowa Code section 713.3. He asserts that certain evidence was obtained in violation of his fourth amendment rights. We reverse and remand.

Darrell Lee Lathum was charged by trial information with second-degree burglary; the case was tried to the court.

Evidence presented established that the Five Seasons Tire Center in Cedar Rapids was burglarized on the evening of January 31, 1984. The owner of the store determined that a key to the premises and an unspecified number of coins had been taken; he had no knowledge of who may have broken into the store. Upon arrival at the scene, investigating officers Chapman and Ray discovered footprints inside and outside the premises. One officer spoke with Timothy Smith, an employee at a nearby gas station, who described two men he had seen earlier in the evening. According to Smith, the men had been at the station acting suspiciously.

Sometime after midnight, the police officers observed defendant Darrell Lathum and one David Nuehring walking out of a restaurant and back toward the general area of the tire store. Testimony indicates that the two men fit Smith's description. They were stopped by the officers, who requested that they present identification and empty their pockets; the identification was not returned. In response to a question Lathum indicated that he and Nuehring had been together all evening. At some point the suspects were told of the break-in and asked to accompany the investigating officers to the scene of the crime.

Upon arrival at the tire store, one officer compared footprints found at the scene with Lathum's footwear and found them to be similar. The officer told Lathum that evidence linked him to the crime and that he was looking for a key that had been in the store cash register. Lathum admitted that he had thrown the key in a snowbank across from a relative's home. At that time, both suspects were formally arrested; however, they were not advised of their constitutional rights. Lathum and Nuehring were subsequently taken to the gas station where the attendant identified them as the persons who had acted suspiciously earlier in the evening. Lathum's fingerprints were later determined to match those found at the scene of the crime.

Apparently, oral and written confessions were obtained from Lathum the following day. There is some indication by the prosecutor that defendant was advised of his constitutional rights at this time. However, we are unable to determine from the evidence presented if this actually occurred, much less when.

Prior to trial, defendant sought to suppress all evidence obtained after he was initially stopped by the police. The prosecution did not resist suppression of statements made at the tire store; nor did they resist the suppression of the oral and written confessions.

After a hearing, the court overruled Lathum's motion and determined that the following was admissible: Lathum's statement that he and Nuehring had been together all evening; evidence concerning the bootprints and fingerprints; and the identification made by Timothy Smith, the gas station attendant.

The case was tried to the court and Lathum was ultimately convicted. He has appealed from this determination.

Defendant's sole claim on appeal is that the aforementioned evidence should have been suppressed on fourth amendment grounds. Specifically, it is argued that from the time of the initial stop Lathum and Nuehring were subjected to a level of restraint indistinguishable from a traditional arrest. Because the "arrest" occurred without probable cause, Lathum maintains that all subsequent evidence was obtained illegally.

Our analysis of the record convinces us that the initial stop by officers passes constitutional muster.

An officer who has a reasonable and articulable suspicion of criminal activity may stop, briefly detain, and frisk an individual for purposes of investigation. *State v. Hensley,* —— U.S. ——, ——, 105 S.Ct. 675, 681, 83 L.Ed.2d 604, 612 (1985); *Terry v. Ohio,* 392 U.S. 1, 29–30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 899, 911 (1968).

In the present case, at the time the defendant was stopped, officers were investigating a specific offense. Lathum and Nuehring fit Smith's description and were close to the location of the burglary. These factors would indicate that the investigating officers had the "reasonable and articulable suspicion" necessary to justify brief detention and questioning. Any statements elicited at the scene of the investigatory stop were properly admitted at trial, including Lathum's statement that he and Nuehring had been together all evening.

The police officers, however, exceeded the bounds of an investigatory stop once they transported the suspects to the scene of the crime and later to the police station. *See Hayes v. Florida,* —— U.S. ——, ——, 105 S.Ct. 1643, 1647, 84 L.Ed. 705, 710 (1985). At that point in the investigation, police procedures were so intrusive that the full panoply of fourth amendment rights was triggered. In essence, in order to legally transport Lathum to the burglary scene, the officers needed either probable cause to arrest or Lathum's consent.

As the trial court determined, there is little, if any, evidence that probable cause existed. In fact, the officers admitted that they did not have probable cause to arrest while they were at the location of the stop. Thus, if the conduct of the police officers is to be considered constitutionally permissible, it must be based upon the voluntary consent of the defendant.

We have carefully reviewed the record and simply cannot conclude that Lathum went to the scene of the burglary voluntarily. Rather, it is apparent that he was submitting to a show of authority. Lathum was stopped by uniformed officers who frisked him, asked him to empty his pockets, took his driver's license, and did not return it. He was told of the burglary and asked to go to the scene of the crime where he was detained. Lathum was never informed he was free to go; indeed, Officer Chapman specifically testified that the suspects were not free to leave. Furthermore, Officer Ray testified that put in the same position he would not feel free to leave. We are inclined to agree with the defendant that he was subjected to a level of restraint that was "indistinguishable from a traditional arrest." *See Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824, 839 (1979).

Evidence indicates that Lathum was cooperative with the officers, but this cannot be equated with voluntary consent. When a suspect's liberty is restrained by show of authority, he does not somehow lose his constitutional rights by complying with the request of the police.

We hold that defendant's fourth amendment rights were violated. Absent probable cause or the consent of the suspects, it was unconstitutional for the police to transport them to the scene of the crime. All evidence obtained after this point should have been suppressed at trial.

Our decision today is not reached lightly. We recognize that the record contains more than sufficient evidence to support a conviction. However, we cannot ignore the fact that much of the evidence, indeed the most damaging evidence, was illegally obtained. For all practical purposes, the investigating officers in this case acted with disregard for the defendant's fourth amendment rights. They used their authority to transport the suspects to the scene of the crime, detain and question them, and obtain incriminating physical evidence—all without consent or probable cause. The federal constitution does not allow, nor are we willing to condone, this violation of constitutionally protected rights.

Accordingly, we reverse the conviction and remand the cause for a new trial.

REVERSED AND REMANDED.

All Judges concur except DONIELSON and SACKETT, JJ., who dissent.

DONIELSON, Judge (dissenting).

I respectfully dissent.

Because the State conceded probable cause did not exist to arrest defendant during the initial questioning, the issue is whether the defendant was voluntarily transported by the police to the scene of the crime. *See Hayes v. Florida,* —— U.S. ——, —— 105 S.Ct. 1643, 1646, 84 L.Ed.2d 705, 710 (1985). The United States Supreme Court has held:

> There is no doubt that at some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments. *Dunaway,* 442 U.S. at 212, 60

L.Ed.2d 824, 99 S.Ct. 2248 [at 2256]; *Florida v. Royer,* 460 U.S. 491, 499, 75 L.Ed.2d 229, 103 S.Ct. 1319 [1325] (1983) (plurality opinion). And our view continues to be that the line is crossed when the police, without probable cause or a warrant, *forcibly remove* a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where no under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.

*Id.* (emphasis added). The majority felt the defendant did not go along with the police voluntarily. I, on the other hand, agree with the trial court and believe defendant did voluntarily consent to being transported by the police.

First, the majority states: "Lathum was never informed he was free to go." I am aware of no authority, and the majority does not cite any authority, which places a duty upon police officers to inform suspects during investigatory questioning that they are free to leave. By the same token, Lathum never asked to leave either. Moreover, I choose to follow the trial court's findings which provided:

> The evidence establishes that the officers were forthright with the defendants. They advised them that they were investigating a burglary. They asked the defendants to accompany them to the scene of the burglary and the defendants did so voluntarily without hesitation. These officers did not indicate that the defendants were not free to leave; they did not state that the defendants were required to remain, nor did they state that they were under arrest or any form of restraint. The defendants never told the police officers that they were desirous of leaving until one of the defendants subsequently indicated that he should possibly see a lawyer. The defendants were cooperative with the police officers. The

defendants were never handcuffed or physically restrained in any manner.... The defendants argue that the facts previously set forth herein do constitute an objective indication that the officer exercised authority over the defendants. While both officers did state in testimony that if the defendants had chosen to leave, they *may* have taken action to prevent their departure; however, these questions were phrased in the hypothetical and are not facts which were actually presented to the officers or the defendants at the time of the stop. (emphasis added).

Before determining whether the defendant's liberty was restrained by a show of authority, I think it would be helpful to review Iowa legal authority on this topic.

The fourth amendment's protections against unreasonable intrusions on a person's liberty arises when an officer seizes a person and the seizure must be founded on an objective justification. *State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981) (*citing United States v. Mendenhall*, 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 507 (1980) (two justices); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968)). Furthermore, not all personal intercourses between policemen and citizens involve "seizure of persons" that implicate the fourth amendment. *Id.* A seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. *Id.* Case law provides that a show of authority constituting a seizure might occur if several officers had a threatening presence, a weapon was displayed by an officer, physical touching occurred by an officer, language or tone of voice used by an officer indicated that compliance might be compelled, sirens, flashing lights, or other signals were used to pull a moving vehicle to the side of the road. *Id.* at 719–20. A commentator has further suggested that a seizure occurs "if the officer engaged in conduct which a reasonable man would view as threatening or offensive if coming from another private

person." *Id.* at 720 (*citing* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 9.2 (1978)).

The Iowa Supreme Court in *State v. Gully*, 346 N.W.2d 514 (Iowa 1984), addressed a situation where the police wanted to question a Mr. Gully regarding a homicide. One officer saw Gully and pulled alongside him in a marked squad car. The court found:

... that [the officer] asked if he was Charles Gully and, upon learning he was, said "they want to talk to [you] down at the station." Defendant asked what he was wanted for, and the officer denied knowing. We do not condone the officer's lack of candor in answering the question, or in failing to advise defendant he did not have to go to the station. Nevertheless, under the totality of the circumstances, we do not think these failures affected defendant's willingness to go to the station.

The officer and defendant do not agree about what was said next. The officer testified defendant simply got into the car; defendant testified he was told to get into the car. On our *de novo* review, *State v. Harlan*, 301 N.W.2d 717, 718 (Iowa 1981), we accept the officer's version. The officer merely told defendant he was wanted at the station and nothing more. The officer made no physical move to subject defendant to his custody. The defendant was neither handcuffed nor formally arrested. He did not appear to be nervous.

If defendant felt somewhat constrained to get into the police car, it was not because he was compelled by the officer. The officer was careful not to tell defendant he had been directed to bring him in. He merely told defendant they "want to talk to [you] down at the station." From that point the officer's silence was the only thing to which defendant could react. That reaction was simply to get into the car voluntarily. It was not a submission to a show of authority.

*Id.* at 514–15. The *Gully* court further determined that:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983).
>
> It is argued that defendant submitted to the authority of a uniformed officer in a marked patrol car, and the statement that he was wanted at the station. Defendant thinks these circumstances were enough to compel him to submit. This argument suggests that an outright command to submit was withheld by the officer merely to render the confrontation ambiguous and to thereby conceal from our review that which was made obvious to the defendant: that he had to submit to authority and accompany the officer to the station.
>
> We do not agree. Something more is required for a seizure than occurred here. For a seizure there must be something uttered or done which would amount to an objective indication that the officer exercised some dominion over the person seized.

The police conduct in *Gully* was equally, if not more, coercive than the present situation and the Iowa Supreme Court still held such behavior did not constitute a show of authority. According to the majority, the police officers "exceeded the bounds of an investigatory stop once they transported the suspects to the scene of the crime and later to the police station." The majority apparently has little difficulty with the frisk, emptying of the pockets, and driver's license request because those events *preceded* the transportation and are also covered by a *Terry* stop. The majority seems to equate a request to a suspect by an on-duty, uniformed police officer to accompany him to the scene of the crime as a

show of authority. Under Iowa law, this is not enough to constitute a show of authority. I conclude that the defendants voluntarily went along with the police officers and did not submit to a show of authority. Nothing was said by the police so as to amount to an objective indication that the police were exercising dominion over Lathum. I would affirm the trial court.

SACKETT, J., joins this dissent.