STATE of Iowa, Appellee,

v.

David D. BRADFORD, Appellant.

No. 99–0065.

Supreme Court of Iowa.

Dec. 20, 2000.

Zorica Ilic of the Sporer Law Firm, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and John Standafer and Douglas Eichholz, Assistant County Attorneys, for appellee.

LARSON, Justice.

David Bradford was convicted of possession of marijuana in violation of Iowa Code section 124.401(5) (1997). He appealed, and the court of appeals reversed on the ground evidence used against him had been illegally seized. We granted the State's application for further review and now vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. *Facts and Prior Proceedings.*

This case was tried to the bench on stipulated facts. The parties agreed that the witnesses listed in the minutes of testimony would testify substantially in conformance with their minutes of testimony. The minutes incorporated by reference the reports made by the officers in connection with the case.

An officer of the Waterloo Police Department was called to the residence of Alice Moore at approximately 2 a.m. January 29, 1998, because she had received threatening phone calls from a person named Antonyo Reese. Reese had come to her house about 7:30 p.m. the night before and threatened to kill her and her children. After leaving her home that evening Reese had called fifteen times with similar threats.

While the officer was taking Moore's statement in his squad car, another person in the house waved to him, indicating another harassing phone call. The officer entered the house and picked up a receiver. He heard the caller, later identified as Phillip Woodyard, say he was on his way over to the house, and "I'm going to cap your ass." Approximately fifteen minutes after the officer left the Moore residence, she called again. Moore told officers that she had seen four or five males in her front yard, that they were threatening her, and that she had seen one of them with a gun. When officers arrived, they saw four males, including the defendant, running from the front of the house and attempting to get into a car parked in the alley behind the Moore residence. Officers drew their weapons to detain the men while they were patted down and handcuffed.

Officers, who continued to look for a fifth person, saw him behind the garage. He was handcuffed and identified as Antonyo Reese. One of the other individuals was identified as Nicholas (a/k/a Phillip) Woodyard. Officers then searched the area because Moore had said she had seen a man with a gun. No gun was found. During the search, Moore identified the individuals, including Bradford, as the ones she had seen in her yard. The officers attempted to identify the individuals by name at the scene, but some of them did not have identifications, and the officers believed not all the men were giving their true names. In fact, it turned out that one individual did give a false name. The individuals did not know, or would not give, their dates of birth or social security numbers, and their stories conflicted with the witnesses' stories.

The subjects were placed in separate squad cars while still handcuffed. The defendant and the others had been at the scene approximately forty-five minutes to an hour when they were transported to the police station for further investigation. They were patted down again for weapons at the station prior to being placed in holding cells. During this second pat down an officer found a marijuana pipe with marijuana residue in the front jeans pocket of the defendant—the evidence that is at the heart of this case. Bradford was arrested; everyone else was released.

Bradford was charged with possession of marijuana. Reese and Woodyard were charged with assault and perhaps harassment as well, although the record is unclear on this point. A fourth suspect was charged with interference for providing a false name to the investigating officers. Bradford moved to suppress the evidence found in the search at the police station on the ground the search exceeded a permissible pat down for weapons. The trial court denied the motion.

Bradford was tried to the bench and convicted. He appealed, claiming that (1) the officers exceeded the bounds of an investigatory stop by transporting him to the police station and (2) officers had no probable cause to arrest him.

## II. *Grounds for the Search.*

 Searches and seizures conducted without a warrant are per se unreasonable unless they fall within one of the exceptions to the Fourth Amendment's warrant requirement. *State v. Canas*, 597 N.W.2d 488, 492 (Iowa 1999). The State has the burden to prove by a preponderance of the evidence that a warrantless search falls within one of the exceptions. *Id.* One such exception is an investigatory *"Terry"* stop.

[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous … he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment. …

*Terry v. Ohio*, 392 U.S. 1, 29–30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968). Bradford argues that the officers exceeded the bounds of an investigatory stop when they held him "for the long period that they did" and transported him to the police station.

 Officers, by exceeding the scope of an investigatory stop, transform the stop into an arrest, which must then be supported by probable cause. *See Centanni v. Eight Unknown Officers*, 15 F.3d 587, 590–91 (6th Cir.1994); *see also Peterson v. City of Plymouth*, 945 F.2d 1416, 1419 (8th Cir.1991).

The fact that the Officers never *formally* arrested [the suspect] does not resolve the issue of whether her detention required probable cause. The Fourth Amendment's protections are not limited to "traditional" arrests; indeed, "[a] clear deprivation of liberty caused by law enforcement officers without formal words is nonetheless an arrest." Thus, "at some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments." To be sure, no bright-line test exists for making this determination. But it is clear that the line between an investigatory detention and an arrest is crossed "when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be *and transport him to the police station*, where he is detained, although briefly, for investigative purposes."

*Centanni,* 15 F.3d at 590 (alterations in original) (citations omitted).

Here, the officers detained Bradford at the scene for almost an hour, handcuffed him, and placed him in a patrol car, then transported him to the police station. This clearly exceeded the permissible bounds of an investigatory stop. As the court said in *Centanni,* "the removal of a suspect from the scene of the stop generally marks the point at which the Fourth Amendment demands probable cause." *Id.* at 591. In such a case there is no such thing as a "*Terry* transportation." *Id.*

When the officers exceeded the bounds of the investigatory stop, the stop was transformed into an arrest, which required probable cause. *Id.* at 590. Bradford concedes the initial investigatory stop was legal under *Terry.* He argues, however, that a two-hour detention and a trip to the police station changed that. He contends that, when the police went beyond the initial investigatory stop, the search that followed was ipso facto illegal. He relies on the case of *State v. Lathum,* 380 N.W.2d 743 (Iowa Ct.App.1985), which said:

> The police officers, however, exceeded the bounds of an investigatory stop once they transported the suspects to the scene of the crime and later to the police station. At that point in the investigation, police procedures were so intrusive that the full panoply of fourth amendment rights was triggered. In essence, in order to legally transport Lathum to the burglary scene, the officers needed either probable cause to arrest or Lathum's consent.

*Lathum,* 380 N.W.2d at 745 (citations omitted). *Lathum* must be distinguished. There, the State did not attempt to show probable cause, and the court observed "there is little, if any, evidence that probable cause existed." *Id.* The case therefore turned solely on whether the defendant had consented to go to the crime scene and later to the police station. The court found Lathum had not consented, and be-

cause probable cause was not established, it reversed the conviction. *Id.* at 745–46.

We believe it is clear that, despite the lack of a formal arrest, Bradford was arrested for Fourth Amendment purposes when the bounds for a *Terry* stop were exceeded. When he was found at the scene, officers immediately drew their guns and covered him while one 'of the officers patted him down. He was placed on the ground while he was being patted down and handcuffed, placed in a squad car, and later taken to a holding cell at the police station. He was detained over two hours in all. Under these circumstances, we believe he was clearly arrested. *See State v. Delockroy,* 559 N.W.2d 43, 46 (Iowa Ct.App.1996).

In *Delockroy* the defendant was removed from her home late at night in handcuffs and placed in the back of a police vehicle. She was transported to the sheriff's office where she was placed in a room, alone, for a considerable amount of time. The court of appeals said that, "[u]nder these circumstances, a reasonable person would believe an arrest had taken place."

The court explained:

> Although the officers never specifically informed Delockroy she was under arrest, that information was conveyed to her by the circumstances of the evening. The totality of the circumstances reveal the encounter between the officers and Delockroy was too intrusive, as a matter of law, to be anything but an arrest.

*Id.*

In the district court, Bradford did not argue a lack of probable cause; he argued only that the poststop search by the officers became so intrusive and lengthy that the search could not be justified under *Terry.* The district court, in its oral ruling (incorporated into a brief written ruling), did not expressly mention probable cause as a basis for upholding the search. However, the court made it clear the search did not rise or fall under *Terry.* The court

discussed the necessity of investigating beyond the pat-down stage, and discussed the reasonableness of the custodial search. The ruling stated in part:

I think the taking of the defendant and his party to the police station for further investigation and identification was appropriate. That investigation, then, removes it from the *Minnesota-v.-Dickerson* [*Terry* pat-down] situation, because we don't have a pat-down, plain-feel situation as in *Dickerson.* We have a search. And I mean, in my view, once the party is taken to the police department for a legitimate purpose, then the officers have the right and obligation to conduct a search.

... So I find that the search of the defendant at the police station, that yielded the pipe, was not an unreasonable search.... [T]he Fourth Amendment talks about unreasonable search and seizure, so the first test is were the circumstances unreasonable, and I find they were not.

On the defendant's appeal, he argued his theory that the police had exceeded the bounds of a permissible *Terry* stop and also that the officers lacked probable cause. The State met these arguments by asserting that the officers did not exceed a proper *Terry* stop, and further, they had probable cause for the search in any event.

 The State argues officers had probable cause to arrest Bradford for trespassing, harassment, and going armed with intent.

To be valid, a warrantless arrest must be supported by probable cause. Probable cause exists when the facts and circumstances within the arresting officer's knowledge would warrant a person of reasonable caution to believe that an offense is being committed.

... "[T]he facts must rise above mere suspicion but need not be strong enough to sustain a guilty conviction. All of the evidence available to the arresting officer may be considered, regardless of whether or not each component would support a finding of probable cause by

itself. Seemingly innocent activities may combine with other factors to give an experienced police officer reasonable grounds to suspect wrongdoing."

*State v. Ceron,* 573 N.W.2d 587, 592 (Iowa 1997) (quoting *State v. Harris,* 490 N.W.2d 561, 563 (Iowa 1992)).

 The question is whether the officers had probable cause to arrest Bradford for harassment. Under the statute, harassment is committed if a person "purposefully and without legitimate purpose" has "personal contact" with another person with the intent to threaten, intimidate, or alarm that person. Iowa Code § 708.7(1)(b). Personal contact does not require physical touching or oral communication but merely an encounter in which two people are in visible proximity to one another. *Id.* Even though there is no indication Bradford himself made threatening calls or had a weapon, he was found with a group that included persons who had made death threats. Bradford and his group were found at 2 a.m. in the yard of a person to whom threats had been made, within fifteen minutes of the latest death threat. They were in close and visual proximity to the occupants of the house. There was also evidence someone in the group had a gun. They attempted to flee from the scene when the officers approached.

The foregoing facts show probable cause to believe Bradford was at least aiding and abetting in the threats directed to persons inside the Moore home even though, of course, he was ultimately charged with a different offense-possession of marijuana. Because we hold there was probable cause for the arrest, the subsequent search was justified. We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**