# IN THE COURT OF APPEALS OF IOWA

No. 12-0977
Filed April 30, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL LOMAX,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


Michael Lomax appeals his convictions for vehicular homicide and four counts of serious injury by vehicle. **AFFIRMED.**


James S. Nelsen of James Nelsen P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Darrell Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Jim Ward, Assistant County Attorney, for appellee.


Heard by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Michael Lomax appeals his convictions for vehicular homicide and four counts of serious injury by vehicle. Lomax asserts the district court erred in denying his motion to suppress due to the warrantless entry into the hospital emergency room and the insufficient basis to invoke implied consent. Lomax further claims the district court erred in denying his motion in arrest of judgment because the State withheld impeachment evidence that an officer involved in the case was later charged with possession of a controlled substance. We conclude the district court properly denied Lomax's motion to suppress because Lomax had no expectation of privacy in a hospital emergency room and reasonable grounds existed to invoke implied consent. We further conclude the court properly denied Lomax's motion in arrest of judgment as the officer's conduct was wholly unrelated and immaterial to Lomax's case. Consequently, we affirm Lomax's convictions.

**I. Factual and Procedural Background**

On August 28, 2011, at 3:00 a.m., Lomax was involved in a car accident that resulted in the death of Jennifer Garcia and the serious injury of four of her passengers. It was determined through the car's data retrieval system that Lomax was driving approximately 100 miles per hour at the time of the accident.[1] The accident occurred at an intersection with a stoplight, and it was later determined Lomax accelerated through a red light.

---

[1] Sergeant Randy Bulver, a collision reconstructionist for the Des Moines Police Department, was able to ascertain that Lomax "was traveling in excess of 100 miles per hour in the seconds before the crash. When the last recorded documentation was obtained, it showed that the defendant's speed was 130 miles per hour and that the brakes were being applied."

Officer Colin Boone conducted the initial investigation. Upon arriving at the scene, Officer Boone observed that Garcia's SUV was overturned and on fire, and Lomax's Dodge Charger was compressed to the passenger compartment. Witnesses reported they had seen Lomax's vehicle driving erratically at a high rate of speed.[2] Officer Boone described the scene as "chaotic," with various officers securing the scene, managing witnesses, and controlling traffic. Lomax appeared to be badly injured and was trapped in his vehicle until the medics could remove him. Neither the odor of alcohol nor empty containers were observed in Lomax's vehicle. Lomax was transported to the same hospital as two of the other injured people.

On his way to the hospital, Officer Boone contacted dispatch to request that the medical examiner be prepared to obtain a blood or urine sample from Lomax. He was also in contact with Officer Brandon Singleton, who had been working traffic control near the accident scene. Officer Singleton informed Officer Boone that he had spoken with Lomax's relatives. Specifically, Officer Singleton recalled Lomax's brother[3] stating: "I can only assume that they've been out partying. That's why I don't go out with them. They get f***** up and act a fool."

Officer Boone entered the hospital trauma center, which he described as "a big, open bay" divided by curtains. This is an area he routinely enters when investigating an accident unless asked to step out by hospital staff, when his presence may impede treatment. Officer Boone discovered Lomax in the left-

---

[2] Officer Christopher Mock was the officer who interviewed the witnesses, and at the scene, he reported to Officer Boone that witnesses had seen the Dodge Charger driving erratically at high rates of speed.

[3] Two of Lomax's brothers were at the scene of the accident—Marcus Lester and Lonell Kinchelow. Lester denied making this statement.

most area and detected the smell of alcohol, which appeared to be coming from Lomax or from the area in which he was laying. Lomax's family later stated they were not permitted to enter the emergency room.

A doctor informed Officer Boone that Lomax was not capable of consent. Consequently, Officer Boone requested that Amy Williamson, a nurse with the medical examiner, obtain a sample of Lomax's blood. Williamson also obtained a urine sample from the catheter that was already in place. It was determined Lomax's blood alcohol content was .175.

Lomax was charged with vehicular homicide, in violation of Iowa Code section 707.6A(1) (2011), and four counts of serious injury by vehicle, in violation of Iowa Code section 707.6A(4). Lomax filed a motion to suppress the evidence of his blood alcohol test. A hearing was held on March 27, 2012, and the district court denied the motion. On March 28, 2012, a bench trial was held on the minutes of testimony, as well as the testimony and exhibits offered during the motion to suppress hearing. The court found Lomax guilty on all counts. A motion in arrest of judgment was filed asserting that, because Officer Singleton was arrested for possession of a controlled substance, a new trial should be held in which Lomax could cross-examine Officer Singleton on his drug use. The court heard arguments on May 11, 2012, and denied the motion, stating that even if it did not consider the testimony of Officer Singleton, probable cause and the statutory requirements for the invocation of implied consent supported the blood draw. Lomax appeals.

**II. Standard of Review**

Because Lomax asserts the district court violated his constitutional rights when denying his motion to suppress and motion in arrest of judgment, we review the rulings de novo. *See State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). While we are not bound by the district court's factual determinations, we may give them deference given the court's opportunity to observe the witnesses first-hand. *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001). To the extent Lomax's arguments rely on the interpretation of statutory requirements, we review the court's ruling for correction of errors at law. *See State v. Palmer*, 554 N.W.2d 859, 864 (Iowa 1996).

**III. Motion to Suppress**

Lomax asserts three ways in which the district court erred in denying his motion to suppress: (1) the warrantless entry into the hospital emergency room resulted in a violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and article 1, sections 8, 9, and 10 of the Iowa Constitution,[4] (2) there was an insufficient basis to invoke implied consent to test for Lomax's blood alcohol content, and (3) the court improperly concluded that, even giving no weight to Officer Singleton's testimony, evidence still existed to support the reasonable grounds determination and statutory requirements for the invocation of implied consent.

---

[4] Lomax's arguments in this section rely on the Fourth Amendment to the United States Constitution. Consequently, we will only address that claim, given the other constitutional arguments are waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

### A. Fourth Amendment

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. We conduct a two-part test when determining whether a search was unreasonable. First, the person challenging the warrantless search must have a reasonable expectation of privacy in the premises searched, both objectively and subjectively. *State v. Lovig*, 675 N.W.2d 557, 562–63 (Iowa 2004). If this expectation exists, we must then determine whether the State unreasonably invaded the protected interest. *Id.* at 563.

Our court has established that a defendant has a reasonable expectation of privacy with regard to his personal belongings in a hospital. *State v. Sheppard*, 325 N.W.2d 911, 914–16 (Iowa Ct. App. 1982) ("We think there was sufficient police involvement in the search and seizure of defendant's clothing which had been packaged that the police should have first obtained a warrant before seizing this property."). However, our case law has yet to reach the question of whether an emergency room is an area in which a patient has a subjective and objective expectation of privacy.[5] The State argues patients have no reasonable expectation of privacy because it is the hospital staff—not the patient—who controls the movement of people in and out of the emergency room. Therefore, the State asserts a warrant is not required for law enforcement

---

[5] Lomax cites *State v. Carter*, 267 N.W.2d 385, 386 (Iowa 1978), for the proposition that when a private citizen engages with the government, the protections of the Fourth Amendment still apply. In oral argument, *Carter* was referenced to support the assertion that people have a reasonable expectation of privacy even in public spaces. While it is true Fourth Amendment protections apply when law enforcement searches the defendant's person or personal belongings, that is not the issue presently before our court. Rather, the issue is whether a reasonable expectation of privacy exists in a hospital room, and therefore, *Carter* is distinguishable.

to enter an emergency room or trauma center. Consistent with that position, Officer Boone testified he regularly enters the emergency room with only the approval of the attending doctors or hospital staff. However, Lomax argues a patient has a privacy interest in an emergency room, as anyone who tries to enter the area must be buzzed in by hospital staff. The State counters that an expectation of privacy does not arise simply because security measures are taken by the hospital staff to maintain supervisory control as to who may enter any given area of the hospital. We agree with the State that, while a patient has an expectation of privacy in their belongings brought into the emergency room, no such expectation of privacy exists in the trauma center locale, which is under the exclusive control of the hospital staff.

Several other states have reached the same conclusion. *See Buchanan v. State*, 432 So. 2d 147, 148 (Fla. Dist. Ct. App. 1983) ("Even if Buchanan had formed a subjective expectation of privacy, it was simply unreasonable for him to have done so in a busy hospital emergency room where medical personnel were constantly walking in and out and where he could have expected to remain only a few hours."); *People v. Torres*, 494 N.E.2d 752, 755 (Ill. 1986) (holding the "defendant had no reasonable expectation of privacy in the hospital emergency room"); *State v. Cromb*, 185 P.3d 1120, 1126 (Or. Ct. App. 2008) ("[P]revailing social norms do not treat a hospital emergency room, even curtained areas within it, as space in which privacy rights inhere."); *State v. Rheaume*, 889 A.2d 711, 714 (Vt. 2005) (noting an emergency room "functions as a freely accessible area over which a patient has no control and where his privacy is diminished").

Based on this reasoning, we conclude Lomax had no reasonable expectation of privacy while in the hospital's emergency room. Consequently, Lomax's Fourth Amendment rights were not violated when Officer Boone entered the area and detected an odor of alcohol arising from the area in which Lomax was laying. We therefore affirm the district court's denial of Lomax's motion to suppress on this basis.

## B. Implied Consent

Iowa Code section 321J.6(1)(b) authorizes an officer to request a blood test if the officer has reasonable grounds to believe the person was operating a motor vehicle while intoxicated and if "[t]he person has been involved in a motor vehicle accident or collision resulting in personal injury or death." "Reasonable grounds" means "the facts and circumstances known to the officer at the time action was required would have warranted a prudent person's belief that an offense had been committed." *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988). The reasonableness of the suspicion is considered in light of the totality of the circumstances and "must be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002) (internal citation omitted).

Several facts support the conclusion Officer Boone had reasonable grounds to believe Lomax was operating a vehicle while intoxicated. Primarily, Officer Boone detected a strong odor of alcohol emanating from Lomax in the emergency room. Furthermore, witnesses at the scene stated they had seen the vehicle Lomax was driving, a Dodge Charger, traveling erratically at a high rate of speed. The severity of the accident supported this observation, given Officer

Boone's testimony that, in his experience, accidents of this magnitude only involve cars traveling very fast. The crash also occurred at 3:00 a.m., a time of night known to law enforcement to be associated with intoxicated drivers. *See State v. Rosenteil*, 473 N.W.2d 59, 62 (Iowa 2000) (observing that the "wee hours of the weekend" are a time "notorious for drunken driving"), *overruled on other grounds by State v. Cline*, 617 N.W.2d 277 (Iowa 2000). The totality of these circumstances, which include the smell of alcohol on Lomax at the hospital, the timeframe of the accident, and witnesses' observations that Lomax was driving fast and erratically, are consistent with intoxicated driving. Consequently, Officer Boone had reasonable grounds to conclude Lomax was operating a vehicle while intoxicated, and the district court properly denied his motion to suppress.[6]

### C. Officer Singleton's Testimony

Furthermore, the district court did not err in determining it need not rely on Officer Singleton's testimony when deciding whether the blood and urine samples were obtained in compliance with Iowa Code section 321J.6. The only unique contribution by Officer Singleton to the investigation consisted of an

---

[6] In his brief, Lomax consistently refers to the fact that Officer Boone called dispatch to request that a medical examiner be ready to draw Lomax's blood *before* Officer Boone arrived at the hospital. This, Lomax claims, is the time at which the reasonable grounds determination was made, and at that point in the night, Officer Boone did not have reasonable grounds to invoke implied consent. However, the statute requires the reasonable grounds determination to be made at the time action is required. *See Owens*, 418 N.W.2d at 342. Here, action was required when Lomax was at the hospital, given he was grievously injured at the scene and could not provide a blood sample or otherwise consent to testing. It was at the hospital when Officer Boone detected the smell of alcohol on Lomax's person, which, combined with the other information Officer Boone possessed, gave rise to the reasonable grounds determination. It was only after this that Nurse Williamson drew a sample of Lomax's blood and collected the urine sample. Consequently, Officer Boone's conduct complied with the statutory requirements of Iowa Code section 321J.6.

unsubstantiated conclusion by Lomax's brother that Lomax had been partying.[7] It was not a statement that Lomax had in fact been consuming alcohol the night of the accident—Officer Singleton himself stated, "I believe it was just an assumption that [the brother] made." This did not negate Officer Boone's observation of the horrendous damage at the scene, the knowledge that Lomax's car was seen traveling erratically at a high rate of speed, or his detection of the odor of alcohol emanating from Lomax's person. Therefore, the reasonable grounds determination did not hinge on Officer Singleton's statement to Officer Boone, and the district court properly denied Lomax's motion to suppress.

## IV. Motion in Arrest of Judgment

Lomax's final argument asserts the district court erred in denying his motion in arrest of judgment. Lomax claims the State withheld exculpatory information—the arrest of Officer Singleton for possession of a controlled substance—which resulted in a *Brady* violation.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that a due process violation occurs when the prosecution suppresses evidence favorable to the defendant that is material either to guilt or punishment. This includes both directly exculpatory evidence as well as impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). To prove a *Brady* violation, the defendant must show: (1) the prosecution withheld evidence willfully or inadvertently, (2) the evidence was favorable to the defense for either its exculpatory or impeachment value, and (3) the evidence was material. *Cornell v. State*, 430 N.W.2d 384, 385

---

[7] Officer Singleton also testified about his activities immediately following the accident as well as described the scene, but this was corroborated by other evidence and testimony.

(Iowa 1988). Evidence is material to the issue of guilt when there is a reasonable probability its disclosure would have changed the outcome of the proceeding. *State v. Jones*, 817 N.W.2d 11, 22 (Iowa 2012).

Here, Lomax failed to establish Officer Singleton's arrest was material, given there is no reasonable probability the disclosure of this information would have altered the outcome of the case. The district court specifically stated:

> Even considering or giving no weight whatsoever to Officer Singleton . . . the Court finds that upon a review of its notes and the record in the matter that the evidence given by the other officers, including Officer Boone, was sufficient to support the probable cause and statutory requirements for the invocation of the implied consent law.

We agree with the district court's conclusion that, regardless of Officer Singleton's contribution to the case, sufficient evidence existed to support both the reasonable grounds determination as well as the convictions. Therefore, any impeachment evidence with regard to Officer Singleton would not have altered the outcome of the proceedings. Moreover, it is not even clear the State had a duty to disclose this information to Lomax, considering Officer Singleton's arrest was unrelated to Lomax's case. *See, e.g.*, *United States v. Rosner*, 516 F.2d 269, 280 (2d Cir. 1975) (holding no *Brady* violation occurred even though the prosecution failed to disclose an undercover agent's perjury in an unrelated case). Consequently, we conclude no *Brady* violation occurred, and the district court properly denied Lomax's motion in arrest of judgment.

Having considered Lomax's arguments, we affirm the opinion of the district court.

**AFFIRMED.**