# IN THE COURT OF APPEALS OF IOWA

No. 14-1844
Filed August 19, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHELE LEE SECORY-MONSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman-Salic, District Associate Judge.


Defendant appeals from a possession of marijuana conviction, challenging the district court's denial of her motion to suppress evidence obtained by police during the course of checking in to a hospital for an involuntary commitment. **AFFIRMED.**


Joseph R. Lapointe, Mason City, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Kelli Huser, Assistant Attorneys General, Carlyle Dalen, County Attorney, and Andrew Olson, Assistant County Attorney, for appellee.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

Secory-Monson was convicted of possession of marijuana. She appeals the district court's denial of her motion to suppress evidence obtained by police during the course of checking in to a hospital for an involuntary commitment. We affirm.

## I.  BACKGROUND FACTS AND PROCEEDINGS

Deputy Cameron Manson transported Michele Lee Secory-Monson to a hospital pursuant to an order under Iowa Code section 125.81 (2013), providing for involuntary commitment for treatment of a person with a substance-related disorder. Deputy Manson located Secory-Monson at a private residence, served her with a copy of the court order, and drove her to the hospital. At the hospital, Deputy Manson escorted Secory-Monson to the emergency room and remained with her until she was admitted to a locked psychiatric unit. When the time came for Secory-Monson to move from the ER to the secure psychiatric unit, she was given a hospital gown to change into and allowed to use the restroom alone to change. Deputy Manson testified patients are made to change into hospital gowns to enforce the hospital's policy of forbidding drugs, weapons, and any other contraband on the psychiatric floor. Deputy Manson asked Secory-Monson to empty her pockets before going into the restroom to change. As Secory-Monson emptied her pockets, Deputy Manson saw a leafy substance suspected to be marijuana.

Secory-Monson was charged with possession of marijuana under Iowa Code section 124.401(5). She filed a motion to suppress, arguing the discovery

of marijuana was the result of an unreasonable search. The district court heard arguments on the motion to suppress and denied the motion.

## II.     STANDARD OF REVIEW

Because Secory-Monson asserts the district court violated her constitutional rights in denying her motion to suppress, we review the claims de novo. *See State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). We are not bound by the district court's factual determinations but can give them deference. *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001).

## III.    ANALYSIS

Secory-Monson claims Deputy Manson violated her rights by conducting a warrantless search. The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect against unreasonable searches and seizures. U.S. Const. amend. IV; Iowa Const. art. I, § 8. Warrantless searches are presumed to be unlawful. *State v. Bradford*, 620 N.W.2d 503, 506 (Iowa 2000). We use a two-step approach to determine whether there has been a Fourth Amendment violation. *State v. Breuer*, 577 N.W.2d 41, 45 (Iowa 1998). First, we determine whether the person challenging the search has a legitimate expectation of privacy. *Id.* Second, if we find the person does have a legitimate expectation of privacy, we determine whether the State has "unreasonably invaded that protected interest." *Id.*

A determination of whether a person has a reasonable expectation of privacy is to be made on a case-by-case basis, considering the unique facts of the situation. *Id.* "The correct test of legitimacy is not whether the individual has

chosen to conceal some private activity but 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.'" *Id.* at 46 (internal citations omitted).

We have previously held no reasonable expectation of privacy exists while in a hospital emergency room. *State v. Lomax*, 852 N.W.2d 502, 506-07 (Iowa Ct. App. 2014). In that case, Lomax had been in a car accident and was lying in the emergency room when an officer entered the area and smelled the odor of alcohol on Lomax's body. *Id.* at 504-05. The court considered that hospital staff—not the patient—controls the movement of people into the room. *Id.* at 506. Other states have reached the same conclusion, considering that placement in an emergency room is temporary (*Buchanan v. State*, 432 So. 2d 147, 148 (Fla. Dist. Ct. App. 1983)); that the patient is not normally in a position to permit or deny access to the area (*People v. Torres*, 494 N.E.2d 752, 755 (Ill. App. Ct. 986); *State v. Cromb*, 185 P.3d 1120, 1126 (Or. Ct. App. 2008); *State v. Rheaume*, 889 A.2d 711, 714 (Vt. 2005)); and that prevailing social norms do not treat a hospital emergency room, even curtained areas within it, as space in which privacy rights inhere (*Cromb*, 185 P.3d at 1126).

Here, Secory-Monson's civil commitment suggests she was not in a position to entertain visitors or to deny access to her room by hospital personnel. She was placed into the room temporarily, while waiting to be admitted to a secure floor.

In further evaluating whether Secory-Monson had an expectation of privacy, we ask whether Secory-Monson's expectation of privacy was one

society considers reasonable. *Breuer*, 577 N.W.2d at 46. The Supreme Court and the Eighth Circuit have both determined involuntarily civilly committed persons have rights analogous to pretrial detainees. *See Youngberg v. Romeo*, 457 U.S. 307, 319-20 (1982); *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001) ("[C]onfinement in a state institution raise[s] concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations.").

The Utah Court of Appeals has concluded a search incident to protective custody for involuntarily committed persons is permitted under the United States Constitution. *State v. Collins,* 53 P.3d 953, 956 (Utah Ct. App. 2002). The court considered the purpose of the search: to protect peace officers, the mentally ill individual, and others. The South Dakota Supreme Court came to the same conclusion: because of the State's legitimate custodial purposes, protective custody curtails a person's reasonable expectation of privacy. *Cordell v. Weber*, 673 N.W.2d 49, 53-56 (S.D. 2003). "A contrary conclusion would frustrate the legislative intent of preserving the safety of the public and the individual taken into protective custody." *Id.* at 54.

Secory-Monson was searched in preparation of her move from a temporary holding area to a secured, state-regulated facility. The State had a legitimate institutional interest in Secory-Monson's safety and the safety of others in the facility. The purpose of Iowa Code chapter 125 is to allow persons with substance-related disorders to receive treatment in order to no longer present a

danger to oneself or others. To forbid facilities from taking reasonable steps to control what items are taken into the facility would frustrate the purpose of the statute.[1]

## IV. CONCLUSION

Secory-Monson's physical location, within a hospital's emergency room, and her position as a civilly committed person being admitted to a secure psychiatric unit, both indicate she did not at that time have a reasonable expectation of privacy. As such, the Fourth Amendment of the United States Constitution and the Iowa Constitution do not protect her from a search. The district court properly denied Secory-Monson's motion to suppress.

**AFFIRMED.**

---

[1] Secory-Monson's appeal arguments focus on challenges to the community care-taking exception to the warrant requirement and a good faith exception. Having determined there was no expectation of privacy, we need not reach those issues.