# IN THE COURT OF APPEALS OF IOWA

No. 19-2090
Filed April 13, 2022

**WENDELL HARRINGTON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Applicant appeals from the denial of his application for postconviction relief. **AFFIRMED.**

Francis Hurley, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Greer and Badding, JJ. Chicchelly, J., and Gamble, S.J., take no part.

**GREER, Judge.**

With a long list of arguments in this appeal, Wendell Harrington continues to challenge his 2008 arrest and convictions following a string of home burglaries and thefts. More than a decade after his conviction, he appeals the denial of his 2012 application for postconviction relief (PCR). His claims include (1) a constitutional challenge to his statutory inability to submit pro se appellate briefs following the 2019 enactment of Iowa Code section 822.3A; (2) that he should have been granted a new trial following the discovery of new evidence regarding drug use by an officer involved in the identification of Harrington before his arrest; (3) that the State suppressed that evidence about the officer; (4) that he should have been allowed to introduce additional depositions and DNA evidence into the PCR record after it closed; (5) that his PCR counsel was ineffective for not seeking the DNA evidence sooner; (6) that the district court failed to rule on his pro se issues regarding suppression of evidence of another suspect; (7) that his PCR counsel was ineffective in arguing the existence of the other suspect; (8) that his PCR counsel was ineffective for failing to file a deposition transcript and report regarding that DNA evidence; (9) that all of his attorneys were ineffective in not arguing that his past convictions of burglary and theft were not crimes of dishonesty and, therefore, should not have been admitted as impeachment evidence against him at the underlying criminal trial; and (10) that the PCR trial judge should have recused himself. For the reasons discussed below, we affirm the PCR court's denial of his application.

## I. Statement of Facts and Prior Proceedings.

Although our court previously outlined the facts of Harrington's underlying criminal conviction, we repeat them here for context:

In the early morning hours of June 14, 2008, several neighbors, Mr. and Mrs. Graves, Ms. Bains, and Ms. Chicchelly, discovered their homes had been burglarized and Chicchelly's car had been stolen. Officer Singleton interviewed the neighbors. Ms. Chicchelly mentioned an incident that occurred the preceding morning. She was walking her dog when a man approached her and threatened to "stick" her with the knife he displayed to her if her dog bit him.

While the officer was meeting with the neighbors, they saw Chicchelly's car go by on a cross street. When Officer Singleton pursued the car, it sped away. The officer followed the car until it crashed while trying to make a turn. As Officer Singleton got out of his patrol car and ordered the other driver to stop and to lie on the ground, the other driver got out and ran away. The officer radioed a description of the driver to other officers, who set up a perimeter and started a search.

Officer Trimble saw a man matching the description of the driver walking behind some shrubs and carrying something in his hands. When Officer Trimble looked behind the shrubs, he found a stocking cap and white cotton gloves. Officer Trimble then got back in his car, drove down the street, and stopped the defendant. When the officer saw that the defendant had fresh dirt on his shirt and grass clippings in his hair, he handcuffed the defendant. Upon searching the defendant, Officer Trimble found a pocket knife with an ivory handle, a gold ring, a cigarette lighter, and cigarettes.

Police took Chicchelly to where police had detained the defendant to see if she could identify him. She identified the knife as the one used to threaten her the previous day. She thought the defendant was the man who had threatened her, but was not completely certain. When police searched Chicchelly's car, they found items taken from all three homes.

The State charged the defendant by trial information with eluding, theft in the first degree, theft in the second degree, and three counts of burglary in the second degree, all enhanced as a habitual offender. The State also charged the defendant with ongoing criminal conduct.

At trial, the court allowed the State to use several of the defendant's past convictions to impeach him in cross-examination during the defense case-in-chief. The jury found the defendant guilty of all charges. The court sentenced the defendant to twenty-five years for ongoing criminal conduct and fifteen years for each of the

remaining six convictions, to be served consecutively, for a total of 115 years.

*State v. Harrington*, No. 08-2030, 2010 WL 2925696, at *1 (Iowa Ct. App. July 28, 2010).

On direct appeal, this court reversed Harrington's conviction of ongoing criminal conduct, finding there was insufficient evidence to support the conviction. *Id.* at *10. We affirmed the rest of his convictions and preserved for possible PCR proceedings his claim of ineffective assistance of trial counsel. *Id.*

On further review to our supreme court, Harrington argued the district court "abused its discretion when it failed to make a record of its balancing of the prejudicial and probative effect of Harrington's prior convictions" of theft and burglary before admitting them as impeachment evidence. *State v. Harrington*, 800 N.W.2d 46, 49 (Iowa 2011). Harrington relied on *State v. Axiotis*, 569 N.W.2d 813 (Iowa 1997), which dictated that a district court must "always balance the probative and prejudicial value of a witness's prior conviction before admitting the prior conviction for impeachment purposes" under Iowa Rule of Evidence 5.609(a)(2),[1] though the test was enumerated only in rule 5.609(a)(1). *Id.* But, our supreme court overturned the *Axiotis* balancing test and determined rule 5.609(a)(2) "applies only to crimes involving dishonesty or false statement and requires the automatic admissibility of these prior convictions for impeachment purposes." *Id.* at 50. The court concluded:

> It has been settled law in this state that convictions for theft and burglary with intent to commit theft are crimes of dishonesty. Harrington makes no contention his prior theft and burglary

---

[1] Rule 5.609(a)(2) stated: "Evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement."

> convictions are not crimes of dishonesty or false statement under rule 5.609(a)(2). Thus, we find Harrington's prior convictions fall within the scope of rule 5.609(a)(2). . . .
>
>      . . . [T]he convictions are automatically admissible for impeachment purposes.

*Id.* at 51–52 (footnote omitted). It noted, though, that many other jurisdictions have "reached different results as to whether theft and burglary convictions are crimes that per se 'involve dishonesty or false statement,'" but it "reserve[d] this potential issue for a case where it [was] properly argued." *Id.* at 51 n.4.

In March 2012, Harrington applied for PCR, requesting to proceed pro se with standby counsel. He originally sought subpoenas of only his trial and appellate counsel. However, the PCR action became more complicated when it was discovered that, in April 2012, Officer Singleton was arrested for two counts of possession of a controlled substance and was subsequently terminated from the Des Moines Police Department (DMPD). In a 2013 discovery request, Harrington asked for records of Singleton's criminal history, any internal affairs investigations from his time as a police officer, and all unsealed information from his time in the military. The court, following a hearing on the matter, ordered the State to produce Singleton's criminal history and internal affairs reports but that it need not provide Singleton's military records. Instead, Harrington could seek the military records from the appropriate source at the State's expense.

The records obtained showed Singleton's first drug charge occurred in 2003, when he was charged with possession of a controlled substance after he and a friend were found with cocaine; Singleton entered an agreement with the State and the charges were dismissed. Singleton's military records revealed a

methamphetamine charge in 2004.[2]   Neither charge was disclosed in his employment application to DMPD.  Then, in 2012, Singleton called in two flat tires on his squad car.  When officers came to help, they found Singleton asleep and discovered marijuana and drug paraphernalia in his vehicle and equipment bag.  Additional paraphernalia and methamphetamine were found in Singleton's personal vehicle and residence.  It was also discovered that Singleton was involved in a hit-and-run accident earlier that morning before calling in the damage.[3]   DMPD placed Singleton on administrative leave and had him drug tested; the screen came back positive for methamphetamine.   Following a complete investigation and pre-disciplinary hearing, Singleton's employment was terminated.  Upon discovering Singleton's history, Harrington moved to amend his PCR application to include claims of prosecutorial misconduct in suppressing evidence about Singleton.

In 2015, Harrington deposed Mandy McConnelee, a former police officer who worked with Singleton for about a year around the time of Harrington's arrest.  She stated, and then reiterated in her testimony at the PCR trial, that she noticed withdrawal symptoms from Singleton while they worked together, which she stated he had explained as a side effect of prescribed opiates he took for a back injury.  She believed this was during the spring and summer of 2008.  However, she was unaware of Singleton taking any drugs, let alone illicit drug use, during work hours,

---

[2] Singleton denies this charge, stating he was in Korea when the results allegedly were recorded in Virginia.

[3] This was not the first preventable accident Singleton was involved in during his employment with DMPD.  There were also two accidents in 2011, two in 2010, and one in 2008.

and she testified that the behavior would be consistent with taking the medication for pain management before a shift and it wearing off by the end of a shift. She confirmed she relayed these concerns to sergeants, but she could not recall who and did not know of any further action. McConnelee clarified that she had no specific recollection of whether this behavior was apparent on the date of Harrington's arrest.

Singleton also gave a deposition and testified. He acknowledged his problem with illegal drugs but denied that he had been using anything at the time of Harrington's arrest. In response to McConnelee's assertions about his prescription drug use, Singleton noted that he had been prescribed medication for his back in 2007 but by June 2008 his pain management no longer relied on opiates. Rather, he claimed his drug addiction did not rear back up until 2011.

To further investigate Officer Singleton, Harrington was granted state funds to hire a private investigator. The investigator assisted with navigating the process of collecting Singleton's military records and investigated other potential suspects for the crimes of which Harrington was convicted. One such suspect, A.H., was a man who Harrington asserted had a similar physical description to Harrington. A.H. was linked to a string of 2008 break-ins that resulted in sexual assaults. At the PCR bench trial, the investigator presented the evidence he found that A.H. might have had similar gloves to those found by Officer Trimble at the time of Harrington's arrest.

With a combination of changes in counsel, bureaucracy involved with navigating the military record database, and the discovery processes in place to protect private information, collecting and accessing Singleton's military record

information required jumping through hoops. From Harrington's initial request in 2013, it took until 2017 for the records to be fully accessible.

In the midst of evaluating the new evidence surrounding Singleton, Harrington also asked for further investigation into hairs his PCR counsel found in the hat admitted as evidence in his criminal case. In May 2015, Harrington moved, pro se, to appoint an expert at state expense to investigate hairs that had been found in the stocking cap. At the hearing on the motion, Harrington said: "I don't know where [the evidence] is or whether it is more than one hair. It was supposedly several hairs. So we want to make sure that we have access to those hairs, wherever they may be located at this time." The court's responsive order, in July, stated:

> Applicant desires to retain the services of an expert with regard to testing of any hair samples or hair follicles that might be located and produced by the respondent. As it has not yet been determined whether such items exist, the motion is denied with the understanding that it may be re-filed if necessary.

In 2016, a trial was held to hear testimony in this PCR case. However, both the State and Harrington were in agreement that there was still evidence to be collected. The court established:

> We can—you know, if you choose to add to the record . . . in writing, by submitting things in writing by means of, let's say, affidavits or stipulations or whatever it might be, or transcripts of depositions, or whatever it might be, yes, you can do that. Although, I will—with this qualification . . . [that] the State will have the opportunity to express those objections. And so the receipt of any of that evidence will be subject to the State's objections, and those objections will be ruled on as part of the final ruling.
> But with that qualification, no, if you want to leave the record open at the end of this thing so that . . . the record gets supplemented, but it doesn't involve any further court time with this guy, then fine. We do that all the time in these cases for a whole

variety of reasons that make it really the only way that you can complete the record in most instances.

Briefing schedules continued to be extended and, in December 2017, the court ordered that the record would remain open for evidence until February 26, 2018. At a January 2018 hearing, Harrington maintained the hairs were not his and, because they were woven into the fabric of the hat, might link the hat to another suspect. He asked for additional evidence to be collected, including a variety of depositions. The court noted in its March 2 order that the case's evidentiary record had closed, but it reopened evidence for the limited purpose of deposing Scott Stocksleger, the Iowa Division of Criminal Investigation (DCI) criminologist who originally examined the hat, and a DMPD identification technician. Stocksleger stated in his deposition that the hairs in the hat might have been missed but that they were not appropriate for the type of DNA testing conducted by the State. Instead, mitochondrial DNA testing might determine whose hairs they were.

In August, Harrington asked the court for funds for the mitochondrial DNA testing. He also requested another deposition of Stocksleger. The State resisted, pointing to the time and expense required for this type of DNA testing. It also noted that, as it stood, there was no DNA evidence connecting Harrington to the hat, and any mitochondrial testing would only, at best, show that someone else had worn the hat at some time. Conversely, the testing would not disprove Harrington was wearing it at the time of the crime. At the hearing on the motion, the court noted that the deadline to collect evidence had already closed and, as the case had drug on for many years, the court would not reopen it again for the additional testing

and depositions.  As the court put it, the case was an "extraordinary situation that . . . should have been decided literally years ago, literally."  It went on:

> I don't know of any other case as a lawyer or as a judge that I can say I've been personally involved with that has dragged on as long as this one has relative to the issues and the evidence for this particular case.  So it's just got to come to an end.  So those two motions [for the additional testing and deposition] are denied.

A written order followed, reflecting the same decision.  Harrington moved for the court to reconsider; still, the court maintained its decision.  Harrington then sought interlocutory appeal, which was denied.

In the midst of this evidentiary debate, Harrington moved pro se for the judge to recuse himself, arguing a conflict of interest existed between the judge and him.  Harrington asserted that the judge acted with partiality toward the State and hostility toward him.  He also raised concerns about the judge's refusal to reopen the record and his belief the State and the judge were colluding to suppress exculpatory evidence.  The district's chief judge overruled the motion to recuse but noted that "due to the court's regular rotation, [the initial judge was] no longer assigned to this case."  But, the judge to which the case had been reassigned issued an order noting that the case had been tried and taken under advisement already by the initial judge and so the initial judge would issue the ruling.  Harrington moved once more for recusal and submitted a complaint to the judicial qualifications commission.  In a hearing on recusal, the judge stated:

> And unless and until I come up with some reason to believe otherwise, those motions will be denied both for recusal and any other kind of disqualification.  I don't think there's grounds for anything like that other than the fact that Mr. Harrington is disappointed that I'm ruling against him.

The court's written ruling detailed that Harrington both failed to prove that "a reasonable person would question [the court's] impartiality under the instant circumstances" and that he "failed to demonstrate actual prejudice," and so the court denied the motion. *See State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005) (requiring proof of both to support grounds for recusal).

As a final arrow from the quiver, Harrington points to his 2019 written brief detailing his closing position in the PCR action. In his pro se brief, Harrington asserted that, during his criminal trial, the State suppressed evidence of A.H. as an alternative suspect. The State responded that A.H. had never been a suspect but was instead an alternate theory suggested by Harrington in the course of his PCR. In its ruling, the court did not specifically address this late allegation but said, "Considering all of the evidence that has been discovered since the filing of this [PCR] action, Petitioner has not proven any prosecutorial misconduct by the State in this case."

Ultimately, on July 31, 2019, the court denied the entirety of Harrington's PCR application. Harrington timely appealed.

**II. Discussion.**

Harrington now brings ten claims against the PCR court, the State, and his past counsel. We address each argument in turn.

**A. Pro Se Appellate Brief.**

Harrington's first argument is that applying Iowa Code section 822.3A (Supp. 2019) to this appeal, which prevents him from filing a pro se brief, would be

unjust.[4]  Ultimately, this is a question of timing—Harrington asserts the 2019 change in law should not affect his appeal of an action filed in 2012 and that doing so would violate his constitutional rights to due process and equal protection.

The State asserts that Harrington has not preserved error on this issue.  We disagree, as Harrington is challenging a procedure that was not implicated in his original application and has only arisen with his appeal.  *See, e.g.*, *State v. Brothern*, 832 N.W.2d 187, 191 (Iowa 2013) ("Generally, we require objections to be made 'at the earliest opportunity' after the grounds become apparent [to preserve error]." (citation omitted)); *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997) (noting error was preserved as the party "raised the constitutional issues at the earliest available opportunity").  As such, we will address Harrington's challenges to Iowa Code section 822.3A.

To address his core argument about timing, Harrington believes that because his case was initially filed in 2012 and most of the conduct that he appeals from occurred before the statute went into effect, this law should not be retroactively applied to him.  This argument begins from a faulty premise.  A statute is applied retrospectively when it "applies a new rule, standard, or consequence to a prior act or omission."  *Hrbek v. State*, 958 N.W.2d 779, 782 (Iowa 2021) (emphasis omitted).  "The prior act or omission is the event of legal consequence 'that the rule regulates.'"  *Id.* (citation omitted).  In other words, a statute is retrospective if it controls a specific action already done.  In this case, Iowa Code

---

[4] Before transferring this case to our court, the Iowa Supreme Court ordered that Harrington's pro se supplemental brief would not be considered according to Iowa Code section 822.3A(1).

section 822.3A controls Harrington's actions while filing his appeal—actions that all took place after the statute went into effect. Our supreme court already established this law does not apply retroactively, and it is not being applied retroactively to Harrington now. *See id.* at 783.

Although in *Hrbek* the court noted that the applicant's equal protection and due process challenges to section 822.3A were not developed in any meaningful way, and here Harrington loosely makes these arguments, we still find guidance from our supreme court to apply in this appeal. *Id.* at 788 (concluding appellants have no constitutional right to "hybrid representation" with both counsel's briefs and pro se supplemental documents). And at center, Harrington's challenges go directly to the claimed violation of his right to enter his pro se briefs alongside those of his counsel of record—or to access "hybrid representation" that was a "right" once provided in a PCR action. Recently, in a challenge involving a pro se notice of appeal in a PCR action, the court discussed the *Hrbek* decision:

> We also rejected the applicant's claims that the prohibition of pro se filings in postconviction-relief proceedings violated the applicant's "inalienable rights; the right to the assistance of counsel; the right to access the courts; the right to the equal protection of the laws; and some principle of due process" and held "there is no constitutional right of any sort to file pro se supplemental documents in postconviction-relief proceedings and postconviction appeals."

*State v. Davis,* 969 N.W.2d 783, 786 (Iowa 2022) (quoting *Hrbek*, 958 N.W.2d at 785). Any "right" to file a pro se brief only originated by a rule of appellate procedure and through case precedent; thus, there is no federal or state constitutional right involved. *See Hrbek*, 958 N.W.2d at 785–86 ("This right [to file pro se supplemental documents] was provided by a rule enacted in January 2001. This right was also provided for in our precedents." (internal citations omitted)).

Because now both *Davis* and *Hrbek* confirm there is no constitutional right to file pro se supplemental documents, we see no reason to wade into the waters of constitutional analysis over Harrington's claims. *See Davis*, 969 N.W.2d at 786; *Hrbek*, 958 N.W.2d at 788.

**B. A New Trial for New Evidence about Officer Singleton.**

Harrington's next challenge is that the PCR court erred in finding that new evidence discovered about Singleton's character was not sufficient to require a new trial. "A [PCR] action based on newly discovered evidence is reviewed for corrections of errors at law." *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016).

Iowa Code section 822.2(1)(d) allows for an applicant to seek PCR if "[t]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." To receive a new trial based on a newly-discovered-evidence claim, an applicant must show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003) (quoting *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991)). The PCR court found that the new evidence about Singleton's substance abuse was available for Harrington to find before the underlying criminal trial even if it would have been challenging to do so; as the court put it, "difficulty does not equate with impossibility." The court also found the evidence was merely impeachment evidence, failing the third prong of the newly-discovered-evidence test, and that the evidence probably would not have changed

the trial's result as there was enough other credible evidence for a jury to convict. Harrington challenges all three findings.

We disagree with the PCR court that Harrington could have discovered evidence of Officer Singleton's drug history before the verdict. In *Moon v. State*, 911 N.W.2d 137, 152 (Iowa 2018), the supreme court placed the burden on the applicant "to demonstrate he could not have raised the newly discovered evidence earlier in the exercise of due diligence." To show due diligence, the applicant must show "that a reasonable effort was made," though the applicant "is 'not called upon to prove he sought evidence where he had no reason to apprehend any existed.'" *State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) (citation omitted). Still, this is a hard hill to climb because "a defendant 'must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed.'" *Id.* (emphasis and citation omitted).

Here, Harrington had no reason to suspect Officer Singleton's drug use before the criminal verdicts were read. Harrington's verdicts came down in October 2008, whereas Singleton's employment with the DMPD was not terminated until 2012. And as to the evidence of his previous drug issues, the fact that the evidence existed at the time of trial is not in itself dispositive; rather, "'newly discovered evidence' refers to facts existing at trial time of which the aggrieved party was then excusably ignorant." *Carter v. Carter*, 957 N.W.2d 623, 637 (Iowa 2021) (quoting *Wilkes v. Iowa State Highway Comm'n*, 186 N.W.2d 604, 607 (Iowa 1971)). It is not the possibility of a path of discovery alone that serves as the test,

but whether the defendant had the responsibility to venture down that path. Here, Harrington was excusably ignorant and had no reason to dig into Singleton's past until he became aware of Singleton's arrest and subsequent termination.

Still, Harrington faces other hurdles. To successfully win a new trial on the basis of newly discovered evidence, the applicant must prove the evidence is material to the issues in the case rather than merely cumulative or impeaching. *Harrington*, 659 N.W.2d at 516. Impeachment evidence is defined as "[e]vidence used to undermine a witness's credibility." *Impeachment Evidence*, *Black's Law Dictionary* (9th ed. 2009). In contrast, when "the newly discovered evidence goes directly toward the central issue in the case, it is not merely impeaching." *State v. Adamson*, 542 N.W.2d 12, 14 (Iowa Ct. App.1995).

Harrington claims that the evidence against him, namely Singleton's testimony identifying him as the man driving away in Chicchelly's car, was a central link in the case against him. And, because Singleton's purported drug use at the time of the arrest goes to his "state of mind," it is a material issue. But, this evidence of Singleton's history of substance abuse, which Harrington is now attempting to base a new trial on, is squarely meant to undermine Singleton's credibility. However Harrington wishes to frame it, impeachment evidence by any other name is still impeachment evidence.[5] Because Harrington has not shown that this evidence is not merely impeachment evidence, the PCR court did not err in denying his request for a new trial based on newly discovered evidence

---

[5] We note that, in parts of Harrington's appellate brief, he openly refers to the evidence as impeachment evidence and states the purpose of the evidence would be to prevent the jury from trusting or believing Singleton's testimony.

regarding Singleton's substance abuse. Plus, it is difficult to see how casting aspersions about Singleton's state of mind from drug use might have changed the trial result given the other extensive evidence against Harrington. *See Moon,* 911 N.W.2d at 145 (noting defense must show how the suppressed evidence, if used evidence effectively, might be the difference between conviction and acquittal).

### C. Suppression of Evidence: Singleton.

Harrington's next claim is that the PCR court erred in finding the State did not suppress evidence of Singleton's bad character in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which provides: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." He believes that during his criminal trial the State "blindly ignore[d] impeaching evidence" about Singleton's drug use and dishonesty. We conduct a de novo review of evidence-suppression claims, as they relate to due process and are of a constitutional nature. *DeSimone v. State*, 803 N.W.2d 97, 102 (Iowa 2011). "To show a *Brady* violation, [the applicant] 'must prove by a preponderance of the evidence "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt."'" *Moon*, 911 N.W.2d at 145 (citation omitted). "Evidence is suppressed 'when information is discovered after trial "which had been known to the prosecution but unknown to the defense."'" *Harrington*, 659 N.W.2d at 522 (citation omitted).

Harrington makes conclusory statements that the State should be imputed with the knowledge of Singleton's drug use and dishonesty—even if such facts

were not actually known by the prosecution at the time of Harrington's underlying criminal trial—but provides no support for that claim. Still, because he believes the State was charged with this knowledge, he asserts the State's suppression of this information should be grounds for a new trial.

The barrier to Harrington's claim begins with the first prong. "The prosecution 'has a duty to learn of any favorable evidence known to . . . others acting on the government's behalf in the case, including the police.'" *DeSimone*, 803 N.W.2d at 103 (alteration in original) (citation omitted). It is the nondisclosure of this evidence, not the good or bad faith of the prosecutor, which is dispositive; the prosecution must disclose this information even without a request by the defendant. *Id.* Harrington fails to show what evidence was suppressed. The record confirms DMPD learned of Singleton's drug use in 2012 and subsequently terminated his employment. While Harrington has a deposition from McConnelee discussing potential withdrawal symptoms and prescription drug use that might have presented themselves around the time of Harrington's arrest, he offered no evidence that Singleton was actively using illicit drugs at the time of his arrest. Harrington also mentions Singleton's 2003 arrest for possession of a controlled substance and his 2004 methamphetamine charge while he was in the military. But he proffers no evidence DMPD, and by extension the State, were aware of these occurrences. The 2003 charge was dismissed, and it was not disclosed in Singleton's employment application for the DMPD. It took Harrington years to discover the 2004 charge and, even then, Singleton disputed its accuracy. From this record, without a clear indication of what evidence of Singleton's drug use Harrington believes existed or was known by the State or others acting on its behalf

while the case was in trial, we have no reason to believe it was suppressed in 2008.[6]

On top of all of that, Harrington provides no argument that the evidence was favorable or material to the issue of guilt. *See Goode v. State*, 920 N.W.2d 520, 524 (Iowa 2018) ("Our appellate rules of procedure and judicial restraint expect claims raised on appeal be specific. A party who fails to satisfy this standard risks waiving the issue." (internal citation omitted)); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [the appellant] might have made and then search for legal authority and comb the record for facts to support such arguments."); *see also* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). As Harrington cannot pass the first prong of the *Brady* test and provides no argument for the second or third, his *Brady* claim must fail.

**D. Mitochondrial DNA and Additional Deposition.**

Harrington next argues the district court abused its discretion when it denied his motion to reopen the record for additional evidence in the PCR proceeding to allow mitochondrial DNA testing on the hairs found in the stocking cap and an additional deposition of Stocksleger. We evaluate discovery issues for an abuse of discretion, and the party challenging the discovery decision carries the burden of proof. *State v. Ary*, 877 N.W.2d 686, 702 (Iowa 2016). "We will find a discovery ruling indicates an abuse of discretion only when it reflects an exercise of discretion

---

[6] We note that Harrington is not the first defendant to raise a *Brady* violation regarding Singleton's involvement in their case. *See State v. Lomax*, 852 N.W.2d 502, 508–09 (Iowa Ct. App. 2014) (finding "no reasonable probability the disclosure of [Singleton's arrest] would have altered the outcome of the case").

on grounds clearly untenable or to an extent clearly unreasonable." *Id.* Harrington must also prove that any abuse of discretion "prejudiced [his] substantial rights." *Id.* at 702–03.

Harrington asserts that, because the court left the record open for additional discovery in 2016, the court abused its discretion by denying the discovery and presentation of additional evidence in 2018. The court did draw a line ending the discovery quest. Still, we believe that the district court acted within its discretion in doing so. The presence of hairs was an issue first raised in 2015, and the PCR record was left open for additional discovery in 2016. Harrington had ample time to ask for and develop this evidence before the evidentiary record closed in 2018. The court had no obligation to continue to let the case languish[7] on after it had already granted a limited extension for specific depositions. The opportunity to test any possible hairs in the stocking cap was available to Harrington from before his trial in 2008 until the date of his final request for testing ten years later— Harrington can hardly claim he had insufficient time. *See In re Marriage of Doss*, No. 20-0624, 2022 WL 108961, at *6 (Iowa Ct. App. Jan. 12, 2022) (finding no

---

[7] As the court reasoned at the hearing:
> You know, who knows what any case, civil, criminal, or otherwise, could become if the rules allowed for an infinite amount of time to discover and an infinite amount of time to research and infinite resources to do all of those things.
>
> But, you know, the rules are in place for a reason, and that is because, as an overarching matter, the Court strives to get things done in a timely fashion and with some finality and, at the same time, tries to be fair to everybody and give everybody an adequate opportunity to present their cases and prepare for trial and do all of those kinds of things.
>
> But at some point, at some point, the case has to come to an end. And, frankly, we reached that point a long time ago.

abuse of discretion when the court denied a party's motion to compel a deposition because discovery had closed and the party had sufficient time for discovery). Likewise, the presence of other hair in the stocking cap only serves to impeach Singleton's initial description of Harrington[8] and would not have overcome the strong evidence against him. The court's decision to leave the record closed was neither untenable nor unreasonable, and we find no abuse of discretion.

**E. Ineffective Assistance of PCR Counsel: Failing to Arrange for Mitochondrial Testing.**

Harrington's next contention also concerns the mitochondrial DNA testing. He asserts that two of his PCR counsel were constitutionally ineffective for failing to seek testing of the hairs from 2015 until his subsequent 2018 motion to reopen the evidentiary record. One of these attorneys served as Harrington's counsel in 2015 when the possibility of the hairs was first raised and the court ordered that such a motion would have to be refiled when the existence of the hairs was confirmed; the other[9] took over the case in March 2016.

We review claims of ineffective assistance do novo. *Ledezema v. State*, 626 N.W.2d 134, 141 (Iowa 2001). To prove counsel was ineffective, Harrington must satisfy the two-prong *Strickland* test by proving both that counsel breached an essential duty and that prejudice resulted. *See State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88

---

[8] Establishing another person's DNA was present in the hat would not show when that person wore the hat, nor would it prove Harrington never wore it.

[9] In a pleading, this counsel stated she first noticed the hairs in October 2017 and did not believe they had been tested. The hairs were then taken to the DCI Laboratory for testing.

(1984)). "Failure to prove either prong of the *Strickland* test results in failure of the [applicant's] ineffective-assistance-of-counsel claim." *State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004). "In the end, the inquiry is transformed into an individualized fact-based analysis." *Ledezma*, 626 N.W.2d at 142.

"To satisfy the breach prong, [the applicant] must establish his counsel's performance fell 'below the standard demanded of a reasonably competent attorney.'" *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018) (citation omitted). We begin with the presumption that counsel was competent; it is up to the applicant to overcome that presumption and "prove[] [their] counsel's performance 'fell below the normal range of competency.'" *Id.* (citation omitted). "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment. Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (alteration in original) (citations omitted).

The prejudice prong, on the other hand, requires Harrington to prove "his counsel's 'errors were so serious as to deprive [him] of a fair trial.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 687). Rather than merely "showing that the error 'conceivably could have influenced the outcome' of the proceeding," the challenger must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citations omitted).

Here, we do not have the benefit of PCR counsels' reasoning for not testing the hairs. Even so, the State speculates that both attorneys could have avoided

asking for the testing for fear the results might connect Harrington to the hat. Harrington rebuts the argument by saying, were that their strategy, his attorney would not have sought the evidence in the first place. Yet, neither attorney Harrington complains of filed the original application for additional expert evaluation of the hairs; rather, Harrington filed the request pro se. At the 2018 hearing for the evidence, then-counsel noted this concern in saying:

> Mr. Harrington is aware that if this evidence, if this DNA testing, does somehow have some sort of connection, Mr. Harrington is well aware that the State can point to that. He understands the risk. . . . We believe it's going to show his innocence. But it can be evidence that, unfortunately for Mr. Harrington, might be beneficial to the State.

Weighing the strength of other avenues to a new trial, counsel may have not wanted to risk a test that might confirm guilt if counsel felt another strategy was more sound. Ultimately, choosing not to seek evidence that could further implicate a client is a reasonable and competent strategy. See Blair v. State, No. 00-1890, 2003 WL 1785896, at *3 (Iowa Ct. App. Apr. 4, 2003) ("Blair's attorney testified he did not try to discover the existence of those letters for it might alert the State to their existence. This falls within the scope of trial strategy."). Both attorneys could have balanced that risk against the limited benefit[10] of potentially discovering that someone else had worn the hat at some point and determined it was not worth it to pursue. Here, Harrington presented no evidence at the PCR hearing to show

---

[10] As the PCR court explained:

> Stocking caps may be loaned, borrowed, stolen, or found on the side of a road. They can be worn by anyone. It is not inconceivable that more than one person wore this stocking cap. Whether or not more than one person's hair was found in the stocking cap would not have undermined the evidentiary value of the stocking cap linking Petitioner to the crimes.

why counsel did not pursue testing. In the face of the presumption that counsel acted reasonably, without evidence rebutting the presumption, Harrington failed to show either PCR attorney breached an essential duty. *See Strickland,* 466 U.S. at 689; *Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008). As Harrington failed to prove that either attorney's performance was below the normal competency, he has not overcome the presumption that his counsel was competent and this ineffective-assistance claim must fail.

### F. District Court's Ruling on Pro Se Issues.

In another argument about timing, Harrington's next claim concerns a pro se brief he filed after the close of evidence. The pro se brief asserted the State had another suspect for the burglaries and thefts, Adam Harvell, and did not disclose that evidence.[11] Because the change in law that currently prevents Harrington from submitting pro se filings did not apply to filings made in the PCR proceedings before the district court, he had a right to both raise the issues in pro se filings and have the district court hear and rule on each issue raised. *Jones v. State*, 731 N.W.2d 388, 391–92 (Iowa 2007), *superseded by statute*, Iowa Code § 822.3A (Supp. 2019) (effective July 1, 2019), *as recognized in Hrbek*, 958 N.W.2d at 785–86. The State concedes this timing question in its appellate brief.

---

[11] In Harrington's appellate brief, he also points to testimony from Officer Trimble at the PCR trial that the officer had seen another potential suspect in his investigation before Harrington's arrest but ruled the man out as a resident of the neighborhood who did not match the given description. To the extent that Harrington is arguing this information was also suppressed, we note that, even in his brief in lieu of closing argument, he raised no concern about this suspect. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Under the previous framework, the court is required to "make specific findings of fact and conclusions of law as to each issue," but "substantial compliance is sufficient. Even if the court does not respond to all of the applicant's allegations, the ruling is sufficient if it responds to all the issues raised." *Gamble v. State*, 723 N.W.2d 443, 446 (Iowa 2006) (emphasis omitted), *superseded by statute*, Iowa Code § 822.3A (Supp. 2019), *as recognized in Hrbek*, 958 N.W.2d at 785–86.

The State argues that Harrington did not raise this other suspect issue in his original, supplemental, or amended applications for PCR, raising it only in his April 2019 pro se brief in lieu of closing arguments; therefore, the PCR court was not required to rule on it. Harrington retorts that, by raising a general *Brady* issue in his amended application, the concern about an additional suspect was also brought to the court's attention. As with most PCR proceedings, we review for correction of errors at law. *Moon*, 911 N.W.2d at 142.

Iowa Code section 822.8 states, "All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application." To raise an issue for the first time in closing argument, years after the final amended application was filed, is simply too late. *See Junk Bros. Land & Cattle v. Buchanan Cnty.*, No. 19-2084, 2020 WL 5230459, at *2 (Iowa Ct. App. Sept. 2, 2020) (agreeing, in a discussion of error preservation, that a district court was justified in declining to address an issue first raised in closing arguments). Notice pleading standards apply in a PCR case. *Mahnesmith v. State*, No. 19-0877, 2020 WL 7868233, at *4 (Iowa Ct. App. Dec. 16, 2020) (citing *Belk v. State*, 905 N.W.2d 185, 188 (Iowa 2017)). These standards do not require that the application "allege ultimate facts supporting each

element of the cause of action"; rather, "it 'must contain factual allegations that give the [State] "fair notice" of the claim asserted so the [State] can adequately respond to the application.'" *Belk*, 905 N.W.2d at 188 (alterations in original) (citation omitted). "The application meets the 'fair notice' requirement 'if it informs the [State] of the [events] giving rise to the claim and of the claim's general nature.'" *Id.* (alterations in original) (citation omitted).

Harrington's argument all along, outside of his closing brief, was that the *Brady* violation consisted of information about Singleton, not about alternate suspects.[12] While he was not required to outline his precise legal argument, he was required to give "notice of the incident giving rise to the claim." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 10 (Iowa 2000). This eleventh-hour argument was not a properly raised claim, and the PCR court was not obligated to respond.

Still, even if the issues were properly raised, the *Gamble* requirement of substantial compliance was met in this case when the PCR court's order stated "the State did not suppress evidence. . . . Considering all of the evidence that has been discovered since the filing of this post-conviction relief action, Petitioner has not proven any prosecutorial misconduct by the State in this case." *See Tooson v. State*, No. 15-0555, 2016 WL 4543531, at *4 (Iowa Ct. App. Aug. 31, 2016) (finding that a court's general ruling that prosecutorial misconduct had not occurred, even without going into each specific allegation, was substantially compliant with *Gamble*). As such, Harrington's pro se concerns about the

---

[12] Harrington raised concerns about Harvell, but not in the suppression context. He provided no evidence that Harvell was actually an alternate suspect in the State's investigation, but instead pointed to Harvell as another possible consideration.

suppression of alternate suspects were properly considered and rejected by the district court.

**G. Ineffective Assistance of Counsel: Failing to Argue the State Suppressed Evidence of an Alternate Suspect.**

Harrington's next argument is an extension of the last; here, he claims that his PCR counsel were ineffective for not arguing that the suppression of evidence about Harvell was a ground for setting aside Harrington's convictions. He asks that we grant him another shot at a new PCR action to further litigate the issue. The State contests that this record is sufficient to decide the claim and argues we should not reach the issue as error has not been preserved. *See Goode*, 920 N.W.2d at 526 ("Without this evidence . . . the record on appeal is inadequate to address the new claim of ineffective assistance of postconviction counsel."). However, ineffective-assistance-of-counsel claims step outside of our typical rules of error preservation, so we can address it in this appeal. *See Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). And Harrington will just have to make do to establish his claim with the record currently before us as, absent a few exceptions, the clock has run on his chance to initiate PCR actions. *See* Iowa Code § 822.3 (providing a statute of limitations of three years from the date the writ of procedendo issued on a defendant's direct appeal to file a PCR application and preventing claims of ineffective assistance from "toll[ing] or extend[ing] the limitations period in this section"); *see also In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon.").

As explained above, to prove ineffective assistance of counsel, an applicant must show both that their counsel breached an essential duty and that the breach caused prejudice. *Kuhse*, 937 N.W.2d at 628. To prove prejudice, Harrington must prove by a preponderance of the evidence, *see Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994), that the errors were serious enough to deprive him of a fair trial and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lamasters*, 821 N.W.2d at 866 (citation omitted). It is not enough to simply assert the error might have influenced the outcome. *Id.* Harrington cannot only rely on the belief that his counsel could have done better. *See Dunbar*, 515 N.W.2d at 15 ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." (internal citation omitted)).

Here, Harrington's prejudice argument is only that he lost the opportunity to have the PCR court consider the issue. *See Douglass v. State*, No. 20-0011, 2021 WL 5458478, at *2 (Iowa Ct. App. Nov. 23, 2021) ("[O]ther than pointing to the lack of response to his request, [the applicant] neglected to explain how any data from his phone would have enhanced his defense. . . . With no showing of how any of the phone data would have benefitted his defense, [the applicant] fails to meet his burden to prove counsel was ineffective."). He has not provided us any reason to believe that the State actually suppressed any evidence or that it even considered Harvell a suspect, but instead makes only conclusory statements that his PCR

counsels' actions in not pursuing the theory kept the additional claim from being considered by the court. *See Penwell v. State*, No. 09-1820, 2011 WL 238196, at *6 (Iowa Ct. App. Jan. 20, 2011) (finding that when the applicant only asserted prejudice based on counsel's failure to raise claims that "may have been instrumental to obtaining a new trial" without any substantive prejudice argument, the burden of proving prejudice was not met (emphasis omitted)); *see also Beard v. State*, No. 15-1393, 2017 WL 2461415, at *2 (Iowa Ct. App. June 7, 2017) ("These vague claims, however, fail to state who those witnesses would have been, what they would have said, and how the omission of their testimony resulted in prejudice to [the applicant]." (footnote omitted)). Without any proof of prejudice, Harrington cannot meet his burden to show PCR counsel was ineffective for not arguing the issue.

**H. Ineffective Assistance of Counsel: Stocksleger's Deposition Transcript and Report.**

Harrington claims that his PCR counsel was ineffective for failing to file the transcript of a deposition taken of Stocksleger and the DNA report. In its PCR ruling, the district court relied on both the deposition transcript and the report, citing to each by page and line numbers. Now, Harrington asks that we order production of both documents and add them into his appendix on appeal. Specifically, he believes his counsel failed to provide this "source material" in our record, depriving us of the ability to determine if the findings of the court were supported by sufficient evidence. Yet, he again gives us no substantive argument of what prejudice resulted. He tells us only that he did not get to review the report and transcript, not that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Lamasters*, 821 N.W.2d at 866 (citation omitted). His claim that counsel was ineffective for failing to file the transcript and report must fail.

**I. Ineffective Assistance of Counsel: Burglary and Theft as Crimes of Dishonesty.**

Harrington's penultimate argument is that all of his attorneys, from the time of his criminal trial through the end of his PCR, were ineffective for not arguing that theft and burglary are not crimes of dishonesty. He makes this claim following the supreme court's decision in his direct appeal that his prior crimes of dishonesty—theft and burglary—were not subject to the balancing test previously laid out in *Axiotis* but were automatically admissible in his criminal trial as impeachment evidence. *See Harrington*, 800 N.W.2d at 50. Again, to prove counsel was ineffective, Harrington must establish both that counsel breached an essential duty and that breach resulted in prejudice. *See Kuhse*, 937 N.W.2d at 628. Harrington argues that, had the convictions not been allowed as impeachment evidence against him, the jury could have better believed his testimony and might not have convicted him.

"[W]here a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless." *State v. Tompkins*, 859 N.W.2d 631, 638 (Iowa 2015). Harrington oversells the value of claiming theft and burglary are not crimes of dishonesty, asserting on appeal that the supreme court "hand[ed] counsel the issue on a silver platter." As our supreme court put it in *Harrington*, "It has been settled law in this state that convictions for theft and burglary with intent to commit

theft are crimes of dishonesty." 800 N.W.2d at 51. And, we have previously interpreted these sections of the *Harrington* opinion that Harrington points to not as undermining controlling Iowa case law that burglary and theft qualify as crimes of dishonesty but instead "our supreme court's refusal to sort out the disparity of interpretations between the various state and federal courts." *Reed v. State*, No. 17-1680, 2018 WL 6659875, at *2 (Iowa Ct. App. Dec. 19, 2018). As arguing this point would have been meritless under current Iowa law, Harrington has not proven his counsel breached an essential duty.

**J. Recusal.**

Harrington's final claim is that the PCR court abused its discretion in denying his motion for the judge's recusal. Specifically, he focuses on the judge's "attitude at the 2016 Bench Trial and the January 24, 2018 Motion Hearing." In the former, the court said, "[I]f you want to leave the record open at the end of this thing so that it gets—so that the record gets supplemented, but it doesn't involve any further court time with this guy, then fine." In the latter, which surrounded Singleton's past drug use before Harrington's arrest, Harrington believes that the court had already determined the drug habit was not relevant and "had already decided the case before receiving all of the evidence." "We review a judge's recusal decision for an abuse of discretion." *Toney v. Parker*, 958 N.W.2d 202, 208 (Iowa 2021) (citation omitted).

Iowa Code of Judicial Conduct rule 51:2.11(A) outlines in part:

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

This is echoed in Iowa Code section 602.1606. Still, "[o]nly personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor. Judicial predilection or an attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor." *Millsap*, 704 N.W.2d at 432 (internal citation omitted); *see also Long v. State*, No. 19-0726, 2020 WL 2061934, at *5 (Iowa Ct. App. Apr. 29, 2020) (citing Black's Law Dictionary to note that "extrajudicial" refers to "outside the court" or "outside the functioning of the court system"). "'[T]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is' because of the 'ever mounting sea of litigation.'" *Carter v. Carter*, 957 N.W.2d 623, 644 (Iowa 2021) (alteration in original) (citation omitted).

Harrington has raised no argument on appeal that the ruling judge had any extrajudicial prejudice apart from simply ruling against him.[13] *See Long*, 2020 WL 2061934, at *6 ("[Appellant] raises no claim that [the judge] had any judicial bias or prejudice toward him stemming from any source other than the judge's prior encounters with [the appellant] in the course of judicial proceedings. . . . [The appellant's] conclusory statements that [the judge] was biased, prejudiced, or had impermissible personal knowledge amount to either mere speculation or a

---

[13] Though in his initial motion for recusal Harrington noted that his attorney clerked for the judge, he has raised no such argument on appeal and so waives the issue. *See Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983) ("Moreover, issues are deemed waived or abandoned when they are not stated on appeal by brief; random discussion of difficulties, unless assigned as an issue, will not be considered.").

misunderstanding of Iowa law.  Neither suffices to show a violation . . . ." (internal citation omitted)).  Without this vital step in his argument, we find no abuse of discretion.

**III. Conclusion.**

For all the aforementioned reasons, we affirm the PCR court's denial of Harrington's application.

**AFFIRMED.**